**Martha THOMPSON, Executrix of the Estate of Della Williams, Plaintiff-Respondent,**

**v.**

**Lindsey WILLIAMS, Sr. and Lorene Williams, Defendants-Appellants.**

**No. 47267.**

Missouri Court of Appeals, Eastern District, Division Four.

May 29, 1984.

Donna Ransom White, St. Louis, for defendants-appellants.

John B. Kistner, Jr., St. Louis, for plaintiff-respondent.

SMITH, Judge.

Defendants appeal from the judgment of the trial court awarding plaintiff Thompson $144,051.13 plus interest, and declaring certain real and personal property held by defendants to be held in constructive trust for plaintiff Thompson. We affirm.

Martha Thompson is the executrix of Della Williams. Della Williams died on September 5, 1981 at age 75. She was survived by two brothers, Joseph and defendant Lindsey, Sr., two sisters, Martha Thompson and Hester Croker, and her deceased husband's brother, Willie Williams. (Della Williams' maiden and married names were the same.) Those five were the legatees of her will. Lorene Williams is the wife of Lindsey, Sr. The will, executed in February 1974, named her husband, Columbus, as executor, Lindsey, Sr. as successor executor, and Mrs. Thompson as second successor executrix. The will distributed Della's property one-sixth each to Joseph, Hester, Martha, and Willie and two-sixths to Lindsey, Sr. Columbus died in 1979. Della was afflicted with diffuse interstitial pulmonary fibrosis which by fall of 1980 caused her to be largely confined to her home. She was weak and experienced weariness after walking across a room. She spent most of her time in bed or sitting in a chair.

At approximately this time she had a friend write checks on her account to pay bills although Della would sign the checks. Friends would also collect rents from properties owned by Della. In approximately November of 1980, her younger brother Lindsey, Sr., began assisting in these chores and he and Lorene moved into Della's home. The friend who had been writing the checks was phased out of that activity, inferentially at least after questioning Lindsey, Sr. about a $300 check for cash. Mrs. Thompson would frequently spend weekends in Della's home and Lindsey, Sr. and Lorene would leave. Mrs. Thompson testified that she was told by Lindsey, Sr. that Della did not want her in the home, which Della denied when the matter was raised by Mrs. Thompson. During this period Lindsey, Sr. had the locks changed and did not provide Mrs. Thompson with new keys.

Between November 1980 and Della's death a series of transactions occurred. (1) $50,000 in certificates of deposit and savings accounts in Della's name were deposited into an account at Thomson-McKinnon Securities in the joint names of Della and Lindsey, Sr. (2) A certificate of deposit for $40,000 in the name of Della at Mercantile Trust Co. was converted to a money market certificate at the same bank in the names of Della or Lindsey, Sr. or the survivor. (3) A checking account at First National Bank in the name of Columbus and

Della was transferred to an account in the name of Della or Lindsey, Sr. to be used to pay Della's bills. (4) In May 1981 a general power of attorney was executed by Della in favor of Lindsey, Sr. (5) Utilizing this power, Lindsey, Sr. withdrew $10,000 from a savings account at First National Bank in Della's name only and deposited it in an account at Manufacturer's Bank in the names of Lindsey, Sr. and Lorene. (6) On June 11, 1981, while Della was in the hospital, Lindsey, Sr. withdrew $9418.67 from the First National Savings account and used it as a down payment on a 1981 Cadillac titled in the name of Lorene and Lindsey, Sr.[1] The remainder of the purchase price came from the Della or Lindsey, Sr. checking account at First National. (7) In May 1981 Della executed title assignments of her 1976 Cadillac and 1974 Pontiac to Lindsey, Sr. who subsequently gave them respectively to his daughter, Loretta, and son, Lindsey T. (8) Also in May 1981, Della signed four quit-claim deeds to real property held in her name only transferring the property to Della and Lindsey, Sr. as "tenants in common with rights of survivorship." (9) On July 3, 1981, while Della was still in the hospital Lindsey, Sr. received four $10,000 checks from the Mercantile money market ((2) above) and opened four accounts at Thomson-McKinnon. Each of these $10,000 accounts listed Lindsey, Sr. and one of Della's sisters, other brother, or brother-in-law as the owners. These accounts were unknown to the other siblings or Willie.

After Della's death additional transactions occurred. On September 6, 1981, Lindsey, Sr. had the will read to the family. He then offered the named legatees $10,-000 each (presumably from the Thomson-McKinnon accounts) in exchange for each signing a release agreeing to make no claim against the estate. They refused. Lindsey, Sr. then closed the four Thomson-McKinnon accounts set forth in (9) above and transferred $34,424.48 to a Monsanto Community Credit Union account in the name of Lindsey, Sr. and Lorene, and $6888.48 to the same credit union in an account in the name of Lindsey T. In late September 1981, Lindsey, Sr. also transferred $5752.32 from the Della or Lindsey, Sr. First National checking account to a Lindsey, Sr. or Lorene account at the same bank. At approximately the same time he transferred by quit-claim deed all interest in the four parcels of real estate to Lindsey, Sr. and Lorene.

With this background plaintiffs filed their petition for declaratory judgment, constructive trust, and accounting, resulting in the judgment heretofore set forth. Lindsey, Sr. did not essentially deny the transactions set forth above but asserted that they were done with Della's consent or at her direction. On an occasion or two in his testimony he indicated that certain of the transfers were intended to be gifts to him. From his testimony and other evidence it is clear that Della had great trust in Lindsey, Sr. and needed someone to conduct her business affairs and manage her assets when her infirmities made it impossible for her to do so. The record does not evidence any mental incapacity of Della but does establish substantial progressive physical infirmity. There is also evidence to support reasonable inferences that the power of attorney was given to enable Lindsey, Sr. to conduct Della's banking and investment business. There is also evidence to support the inference and conclusion that certain transfers of accounts executed by Della to the names of herself and Lindsey, Sr. were made to enable him to manage her investments for her. There was similar testimony that the signing of the quit-claim deeds was done because of Della's belief that it was necessary or at least desirable for Lindsey, Sr. to be named a co-owner in order to manage those properties. Of particular interest is a recurring theme throughout all the testimony of Della's discussion of her property passing to her relatives under her will and her refer-

---

1. Lindsey, Sr. first testified that the car title included Della's name and when confronted with documentary evidence to the contrary stated that he tried to include Della's name but was told by the salesman that Della was too old to have the title in her name.

ences to Lindsey, Sr. as the executor. A reading of the transcript leaves the clear conclusion that Della viewed Lindsey, Sr.'s activities as executor to begin during her life when he began the management of her assets and that the transfers into joint names was a pre-death placement of her assets into his hands in his capacity as executor of her estate. Lindsey, Sr.'s testimony leaves a similarly clear conclusion that he understood that to be Della's belief and intent. He is deemed to have accepted the transfers on that basis.

Initially defendants contend the trial court lacked jurisdiction because this was essentially a discovery of assets proceeding and only the probate court had jurisdiction. That contention has been squarely rejected in *Mathews v. Pratt*, 367 S.W.2d 632 (Mo. 1963) and nothing more need be said. The trial court had jurisdiction.

Defendants, Lindsey, Sr. and Lorene,[2] address each of the various transactions and argue that the evidence does not establish that Della acted under the undue influence of Lindsey, Sr. For purposes of this opinion we will accept their assertion that undue influence was not established. The simple answer to that assertion is that it did not need to be.

■ The rule to be applied is stated succinctly in *Swon v. Huddleston*, 282 S.W.2d 18 (Mo.1955) [9, 10]:

"If a fiduciary or confidential relationship exists between the alleged trustee and the beneficiary, no proof of fraud is necessary in order to establish a constructive trust (citations omitted). It seems that this exception is based upon the principle that a breach of confidential relationship is, in itself, a constructive fraud."

*See also, McFarland v. Braddy*, 560 S.W.2d 259 (Mo.App.1977) [4]; *Murphy v. Olds*, 508 S.W.2d 249 (Mo.App.1974) [5-7].

■ A confidential or fiduciary relationship exists whenever one trusts in and relies on the other. There must be evi-

dence of a special trust with respect to property or business. *Wilhoit v. Fite*, 341 S.W.2d 806 (Mo.1960) [5-6]. The evidence in the record makes abundantly clear that Della had complete trust in Lindsey, Sr. to manage her financial affairs and property, and gave him authority and power to do so. His relationship to her was as a fiduciary.

It is important to note the difference between the case at bar and the situation present in *Wilhoit* which presents a factual situation similar to the authorities relied on by defendants. There the question was whether one in a confidential relationship exerted undue influence in procuring the execution of a will leaving him a substantial bequest. In that situation the confidential relationship formed the opportunity for use of undue influence to cause the other party to make a disposition he would not otherwise have made. Such a situation does not involve the actual breach of a fiduciary obligation but rather the use or abuse of the relationship of trust. It is in that context that *Wilhoit* requires that the fiduciary charged with undue influence "was active in procuring the execution of the will." The case at bar deals with actual breach of the fiduciary obligation regardless of the circumstances which created the relationship in the first place. We are not, therefore, concerned with whether Lindsey, Sr. exerted undue influence to achieve his control over Della's assets, but rather whether his exercise of that control once achieved was in breach of his fiduciary obligations.

There can be no question that Lindsey, Sr.'s exercise of control over Della's property was in breach of his fiduciary obligations. We do not view Lindsey, Sr.'s actions as a series of isolated transactions. Through a period of approximately six months he was placed in control of virtually all of Della's assets. This control was given to him so that he could manage those assets for Della's benefit and after her death administer them as part of her estate. Instead he utilized those assets for

---

2. The trial court found Lindsey, Sr. acted as the agent for his wife. That conclusion is fully

supported by the evidence and is not challenged on appeal.

his own benefit. In some cases he procured different assets with Della's money which he titled solely in his and his wife's name. He made no real effort to justify any of these activities.[3] His handling of the four Thomson-McKinnon accounts opened in the joint names of himself and each of the other beneficiaries of Della's will evidences not only a recognition that the assets he was handling belonged to Della and subsequently to her estate but also his conscious design to thwart that will and retain the bulk of Della's assets for himself.

Defendants rely upon *In re Estate of LaGarce,* 487 S.W.2d 493 (Mo. banc 1972) to support their claim to outright ownership of bank accounts held during Della's life jointly in her and Lindsey, Sr.'s names. Such reliance is misplaced. That case specifically states [2–4]:

> "The statute is clear and needs no construction. It is our view that if the statute is complied with, in the absence of *fraud,* undue influence, mental incapacity, or mistake, the survivor will become the owner of the account." (Emphasis supplied).

The accounts were established in joint names to facilitate the management of Della's assets with the intention they would become a part of her estate. Lindsey, Sr.'s handling of those accounts contrary to that purpose and intent was a breach of fiduciary duty and constructive fraud as a matter of law. The same is true as respects the four deeds. *Swon v. Huddleston, supra.* The evidence is clear, cogent and convincing that the property was titled in Lindsey, Sr.'s name in order that he could manage it and include it as part of Della's estate upon her death. His subsequent actions in transferring the property to himself and his wife was also a breach of his fiduciary obligations. The trial court properly decreed a constructive trust existed as to all the property held by Lindsey, Sr. in

his fiduciary capacity or transferred by him while acting in such capacity.

Defendant's final challenge is to the trial court's order of an accounting. Such an order was proper. *Stark v. Cole,* 373 S.W.2d 473 (Mo.App.1963) [5–7]; *Kalberloh v. Stewart,* 378 S.W.2d 820 (Mo.App.1964) [7–8].

Motions taken with the case are denied.

Judgment affirmed.

GAERTNER, P.J., and STEPHAN, J., concur.

---

**3.** It is difficult to imagine a justification for the purchase of a new Cadillac for a woman in the hospital with a terminal illness who had left her residence only four times in the prior eight months.