**Marilyn KEMPEN, Grace Cook, and Leonard Cook, Plaintiffs/Respondents,**

v.

**Annetta LONG, Henry Cook, and George Cook, Defendants/Appellants.**

No. 65224.

Missouri Court of Appeals, Eastern District, Division Four.

Dec. 20, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 25, 1995.

Application to Transfer Denied March 21, 1995.

John L. Sullivan, Robert J. Brummond, Sullivan and Brummond, St. Louis, for appellant.

Melvin G. Franke, Villa Ridge, Daniel M. Buescher, The Brasher Law Firm, St. Louis, for respondent.

KAROHL, Judge.

Annetta Long, Henry Cook, and George Cook appeal after the trial court's judgment imposed a constructive trust on money held in a joint savings account in the names of Annetta Long and her deceased mother, Elda Cook. The court found Annetta breached a promise to her mother that she would divide the money in the account equally among herself; her brothers, Henry, George, and Lawrence Cook; and her sisters, Grace Cook and Marilyn Kempen, and consequently imposed a constructive trust on the funds in the joint account. On appeal, Annetta challenges the sufficiency of the evidence. We reverse.

Elda Cook died testate on October 26, 1985, survived by her six children, Annetta Long; Henry, George, Lawrence, and Grace Cook; and Marilyn Kempen. She was a widow at the time of her death. In the five years before her death, Elda had established five joint bank accounts with right of survivorship with her daughter Annetta. Only one Mark Twain savings account opened on April 6, 1982, and numbered 1000199–4, is at issue on appeal.

In the summer of 1985, Elda went to Mark Twain Bank and purchased six $3,000 Franklin Mutual Fund certificates. She named herself and one child as joint owners of each account. In August 1985, Grace and Annetta accompanied Elda to a lawyer for the purpose of preparing a new will for Elda. Grace testified that during the trip to the lawyer's office Elda told Grace and Annetta that she wanted everything divided equally among her children and Annetta assured her it would be done. Grace further testified that Elda named Annetta as executrix in place of Leonard Cook because she was concerned that Leonard would not divide everything equally. She did not say Elda defined her meaning of "everything." Other relatives testified Elda stated she did not want any fighting and she wanted everything divided equally. However, they testified that either Annetta was not present when those statements were made or they could not remember whether she was present. Annetta denied she had heard her mother say she wanted everything divided equally and she and her mother had never discussed the disposition of the money in the joint account.

There is no contention Annetta did not fulfill her duties as executrix under the explicit terms of the will. After Elda's death, Annetta delivered the Franklin Mutual Fund certificates to Mark Twain Bank. The certificates were reissued, leaving them registered in each of the six children's names. Annetta, as surviving joint tenant on the Mark Twain Bank account divided the account with two of her brothers, Henry and George. She gave each of them $10,842. She kept $52,300.

Marilyn, Grace, and Leonard sued Annetta, George, and Henry to impose a constructive trust on the funds that were held in the

joint accounts by Elda and Annetta. The trial court imposed a constructive trust only on the Mark Twain savings account # 1000199–4, in the amount of $52,300. Judgment was entered in the amounts of $17,672.46 each in favor of Marilyn, Grace, and Leonard, all said sums against Annetta. No judgment was entered against Henry and George.

On appeal, Annetta, Henry, and George argue the trial court erred in imposing a constructive trust on the joint account with right of survivorship against the surviving joint tenant because there was insufficient evidence of a promise by the surviving joint tenant to receive the proceeds of the joint account and thereafter redistribute such proceeds equally among the devisees of Elda's will. We agree.

■ Our review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or the trial court has erroneously declared or applied the law. *Id.* at 32.

The current state of the law on joint bank accounts was recently recited in *In the Estate of Hayward*, 884 S.W.2d 10 (Mo.App. W.D.1994):

1. Ownership of joint accounts vests in the account survivor as a matter of law, absent evidence of fraud, undue influence, mental incapacity, or mistake [citations omitted].

2. The joint account statutes [§§ 362.470 and 369.150 RSMo 1986] dictate that the decedent's intent to pass the funds to the account survivor is *conclusively* established by an account arrangement which comes within the terms of the statute, subject only to the exceptions mentioned above. Such conclusive effect of the statute is binding not only in a dispute between the financial institution and an account claimant, but also as between the account survivor and another account claimant [footnote and citation omitted]. If the account is titled in such a way as to come within the terms of the applicable statute, evidence of the depositor's intent is irrelevant, except in cases of fraud, undue influence, mistake, or mental incapacity [citation omitted].

3. Any co-tenancy arrangement in which the account is payable to either tenant is governed by the joint account statutes [citation omitted].

■ To establish a constructive trust, an extraordinary degree of proof is required. *Fix v. Fix*, 847 S.W.2d 762, 765 (Mo. banc 1993). The evidence must be unquestionable in character. *Id.* The evidence must be so clear, cogent, and convincing as to exclude every reasonable doubt in the mind of the trial court. *Id.* Generally, the evidence must show decedent made disposition of the property in question in reliance on an agreement, express or implied, to handle the money in a certain fashion and a subsequent breach of that agreement. *Id.* at 767.

■ In this case, there is no evidence the joint bank account was established as a result of undue influence, mental incapacity, or mistake. Thus, the issue is whether the trial court correctly applied the law in imposing a constructive trust on the basis of fraud. Under this standard, there must be clear, cogent, and convincing evidence of a breach of trust on the part of Annetta. We conclude the trial court erroneously determined the evidence was sufficient to meet this high standard to establish Annetta had agreed to divide the money in the joint account equally and had subsequently breached this promise.

Several recent cases have discussed this evidentiary standard in great detail. In *Fix*, the case that set forth the standard, decedent executed a will that directed the personal representative, one of her brothers, to distribute her assets among her siblings. She also had joint accounts with right of survivorship with her sister, Billie. Decedent's brother testified decedent had told him she had placed the money in the joint accounts with Billie to avoid probate and she trusted Billie and believed Billie would divide the money in accordance with the will. He said decedent had also stated she trusted Billie to "do the right thing."

The wife of the personal representative testified decedent would not place the names

of any of her other siblings on the accounts because she did not want Billie to think she did not trust her. In addition, the wife testified decedent told her Billie knew what the decedent wanted done with the money, which was to divide the amounts equally among all her siblings. Both the brother's wife and his daughter testified that after the funeral of the decedent, Billie stated, "Everyone thinks that I'm going to cheat them, but they're going to get their money." Billie denied decedent had told her to divide the money in the joint accounts equally among all the siblings, nor did decedent tell her she had placed the money in the joint accounts to avoid probate. She also denied she ever made statements about anybody getting their money.

In reversing the trial court's imposition of a constructive trust, the Missouri Supreme Court found that such evidence was not sufficiently clear, cogent, and convincing that Billie accepted the designation of joint tenancy knowing of decedent's intent. The court stated, "Absent clear, cogent and convincing evidence of an agreement or understanding by Billie upon which [decedent] relied so as to make disposition of her property by joint accounts with right of survivorship, there is insufficient proof to allow a finding of constructive fraud." *Fix*, 847 S.W.2d at 768.

The Western District of this court recently applied the *Fix* evidentiary standard in *In re Estate of Murray*, 865 S.W.2d 694 (Mo.App. W.D.1993), and *In the Estate of Hayward*, 884 S.W.2d 10 (Mo.App.W.D.1994). In *Murray*, decedent named her granddaughter as personal representative of her estate and held a certificate of deposit as a joint tenant with right of survivorship with her grandson. As evidence that the funds from the certificate should be held in a constructive trust, the granddaughter testified decedent had said on several occasions before her death that her assets were to be divided among all the grandchildren. In addition, the granddaughter testified she overheard the grandson tell decedent she should put his name on the certificate so it would be easier for him to take care of her business when it was time to renew the certificate. According to the grandson's testimony, however, there was no

agreement or understanding, implicit or explicit, that he would distribute the funds to the other grandchildren.

In reversing the trial court's imposition of a constructive trust on the funds, the appellate court stated,

To support the imposition of a constructive trust in this case, it is essential to have clear, cogent and convincing evidence of 1) [decedent's] having made disposition of her property in reliance on an agreement by [her grandson], express or implied, to divide the money with the remaining grandchildren, and 2) [the grandson's] subsequent breach of the agreement [citation omitted]. The evidence presented by [the granddaughter] could not be called "clear, cogent and convincing evidence of constructive fraud or undue influence." Nor, it is apparent, did the trial court apply a standard of "clear, cogent and convincing evidence." ... *It is only in very clear cases that a constructive trust may be imposed—not cases where the evidence is doubtful or conflicting.* (Our emphasis). *Murray*, 865 S.W.2d at 697.

In *Hayward*, decedent named her niece personal representative of her estate and also placed her cash assets in joint bank accounts with the niece. The attorney's file notes contained notes concerning decedent that her "bank accounts, bonds, etc. being placed jointly with Esther, a niece, and she will divide." Another relative of decedent testified decedent stated in the last few years of her life she intended for her estate to go to her brothers and sisters and their children and she trusted the niece "to do the right thing." There was no evidence the niece was present when these comments were made. The niece denied decedent expressed to her any intention concerning the disposition of the funds in the joint accounts after her death.

The trial court concluded decedent intended her cash assets be divided by the niece in accordance with the will and the assets were registered in the joint accounts to avoid probate yet to bring them into the hands of the niece, so she could carry out the estate plan. The trial court further found the niece had been instructed by the decedent to divide the

joint assets according to the terms of the will and the niece caused decedent to believe she would make the division. In addition, the niece caused decedent to create survivorship titles in the assets and to maintain such survivorship titles in reliance on her belief the niece would divide the assets. The failure of the niece to fulfill her obligation constituted constructive fraud, thereby necessitating the imposition of a constructive trust on the joint accounts.

The Western District reversed on the ground the evidence was not sufficient under the *Fix* standard to support the trial court's findings. The court held, "Given that standard, we conclude that the trial court could not reasonably have had the requisite degree of certainty that such a communication actually took place." *Id.* at 15. Although there was testimony decedent had said the money in the joint accounts was to be divided equally on her death, the court placed great importance on the fact that *"[the niece] never conceded that she understood [decedent's] intent to be that the funds should be divided."* (Our emphasis). *Id.* at 17. Thus, the evidence did not reach the level of clear, cogent, and convincing, as required by *Fix*. *Id.*

In contrast to *Fix, Murray,* and *Hayward* is *Thompson v. Williams,* 671 S.W.2d 442 (Mo.App.1984), in which the appellate court found the joint tenant on decedent's joint accounts, who was also named the executor of the estate, made an implied promise to decedent to divide the funds in such accounts according to the terms of the will. The court stated,

A reading of the transcript leaves the clear conclusion that [the decedent] viewed [the joint tenant's] activities as executor to begin during her life when he began the management of her assets and that the transfers into joint names was a pre-death placement of her assets into his hands in his capacity as executor of her estate. *[The joint tenant's] testimony leaves a similarly clear conclusion that he understood that to be [the decedent's] belief and intent.* He is deemed to have accepted the transfers on that basis. [Our emphasis]. *Id.* at 445.

The focus of the *Thompson* opinion was on proof of an agreement to divide between decedent and the suing joint tenant.

The evidence adduced at trial in the case at bar is similar to that in *Fix, Murray,* and *Hayward,* in which the joint tenants never conceded they were aware of decedent's intent to have the money in the joint accounts disposed of in such a way other than by right of survivorship. The evidence here showed Elda made statements to the effect she did not want any fighting and she wanted "everything" divided equally. However, Annetta testified she had not discussed the disposition of the funds in the joint accounts with Elda nor was she aware of any statements Elda may have made regarding an equal division of such monies. Only Grace testified Annetta was present on at least one occasion when such statements were made. Thus, the evidence is conflicting on whether Annetta was present when Elda made a statement about division. However, there is no evidence Annetta ever agreed with Elda to divide the subject joint bank account. No witness gave testimony Elda ever spoke about joint accounts.

We reverse the judgment of the trial court imposing a trust on the proceeds of the Mark Twain savings account # 1000199–4. We remand this case to the trial court with instructions to dissolve the order imposing a trust on the liquid assets derived from this account and to enter judgment for Annetta Long, Henry Cook, and George Cook.

AHRENS, P.J., and SIMON, J., concur.