Wilma Ruth SCHNUCK, a personal representative of the Estate of Virgil A. Schnuck, Deceased, Appellant,

v.

Nellie E. SCHNUCK, Respondent.

No. WD 50583.

Missouri Court of Appeals,
Western District.

Jan. 2, 1996.

**684**

Dale Reesman, Williams, Reesman & Tate, Boonville, for Appellant.

H. Mark Wooldridge, Boonville, and Susan M. Hunt, Kansas City, for Respondent.

Before SMART, P.J., and LOWENSTEIN and BERREY, JJ.

LOWENSTEIN, Judge.

This action for a discovery of assets and accounting of the assets of the decedent Virgil Schnuck (Virgil), is brought by his surviving wife, Wilma Schnuck (Wilma), against Virgil's former wife and business associate, Nellie Schnuck (Nellie).

The following timeline is in order:

1934 Nellie and Virgil married (they farmed, did construction and sold cars).

1965 Nellie and Virgil are divorced. Not too long after, Wilma and Virgil marry.

1966 Nellie and Virgil form a corporation with equal share ownership and shares owned as joint tenants with right of survivorship.

1975 NOW banking account opened, to be operating account for corporation; joint ownership is shown on signature cards.

1982 Corporation is liquidated, Bill of Sale of trucks, caterpillars and miscellaneous personal property go from corporation to Nellie and Virgil as tenants in common. NOW account remains open and is used as operating account for their partnership. Nellie and Virgil continue business enterprises under an oral partnership.

1987 TDOA account opened with Nellie and Virgil as joint tenants. Money comes from surplus NOW funds. The TDOA is a certificate of deposit, and the certificate is issued to Nellie and Virgil as joint tenants.

1990 Virgil and Nellie go to bank to confirm NOW and TDOA accounts were in joint ownership with right of survivorship.

1991 Late spring or early summer—Nellie and Virgil go to bank to verify signature cards on accounts. According to bank president, Virgil appeared "sharp and very alert."

1991 Virgil dies. Nellie cashes in NOW and TDOA for herself.

1992 This petition filed by Wilma as Personal Representative of Virgil's estate to discover estate's share of partnership assets. She wants one-half of both accounts to be determined to be estate property.

A bench trial was conducted to determine the ownership of the NOW account ($24,493.10), and the TDOA (Cert.Deposit—jointly) ($103,768.37).

The trial court found that, 1) Virgil and Nellie were operating as equal general partners, and 2) The NOW account had been an operating checking account under the corporation and then their partnership until Virgil's death:

The account was created and maintained during all the time of its existence as a jointly owned contract with the depositors. As and when the balance in said account was sufficient and not needed by the partners for their own personal needs, there was purchased from the account funds a bank certificate known as a TDOA account. The original amount in said account was added to from time to time from surplus in the NOW account. This account was taken out and maintained as a jointly-owned account between the partners as joint tenants with right of survivorship as shown by the bank records and signature card signed by both partners.

The court held the clear intent of the partners was that the partnership money be in joint tenancy. The court specifically noted the testimony of the bank president amplified on the intent of Virgil and Nellie to set up and keep these two account assets as joint. The court concluded §§ 362.470 and 369.174, RSMo. (1994), presumed the accounts to be in joint tenancy, without a showing of fraudulent conduct on Nellie's part. This resulted in the denial of the personal representative's claim and the conclusion that the NOW and TDOA accounts passed to Nellie at Virgil's death.

Wilma asserts on appeal the trial court erred in its judgment as a matter of law and had insufficient evidence to support its finding under the applicable standard of review, set out in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## MISTAKE OF LAW

■ In this portion of her appeal, Wilma basically argues that since the funds going into the NOW operating account came from the partnership of Nellie and the decedent, and since the TDOA funds came from the spill-over of operating funds from the partnership, by operation of law, these two accounts were partnership property and not joint property belonging to a survivor. She relies on § 358.080, RSMo. (1994), part of the Uniform Partnership Law, which states: "1. All property ... acquired by purchase or otherwise, on account of the partnership is partnership property. 2. Unless the contrary intention appears, property acquired with partnership funds is partnership property." Without once acknowledging the existence of § 362.470, RSMo. (1994) which deals with joint deposits with banks, she makes the point that the partnership law takes precedence over § 362.470.

Wilma's point is not well taken. The accounts here in question were with a bank. The signature cards on the NOW account were for a joint account payable to "either or survivor." The TDOA time certificate says, "you will own the certificate as joint tenants and not as tenants in common."

Section 362.470.1 reads:

"When a deposit is made by any person in the name of the depositor and any one or more other persons ... as joint tenants, or in form to be paid to any one or more of them, or the survivor ... of them ... the deposit thereupon and any additions thereto made by any of these persons ... shall become the property of these persons as joint tenants."

The subsection goes on to state the making of such a deposit or any additional deposit,

"in the absence of fraud or undue influence, shall be conclusive evidence in any action or proceeding to which either the bank ... or any survivor is a party to the intention of all the parties to the account to vest title to the account and the additions thereto and all interest thereon in the survivor."

See § 369.174, RSMo. (1994) which covers similar accounts with savings and loan associations.

The current state of the law on joint bank accounts would seem to preclude holding that a partnership source of funds is controlling, with no evidence of undue influence, mental incapacity, mistake or fraud. *Kempen v. Long*, 892 S.W.2d 727, 729 (Mo.App.1994). Starting with *In the Estate of LaGarce*, 487 S.W.2d 493 (Mo. banc 1972), and continuing past § 362.470, the current law is summed up in the *Estate of Hayward*, 884 S.W.2d 10, 14 (Mo.App.1994), as being that the joint account statutes dictate that the decedent's intent to pass the funds to the account survivor "is conclusively established by an account arrangement which comes within the terms of the statute," and subject only to evidence of fraud, etc., as mentioned above. *Hayward* states that for imposition of a constructive trust when the account is set up in a joint tenancy situation there must be an "extraordinary degree" of proof of fraud or undue influence by clear, cogent and convincing evidence. 884 S.W.2d at 14. To rule for the appellant would be to *ipso facto* hold that the statutory law of partnership or the partnership source of funds in a joint account trumps the joint tenancy law, and this court declines such a ruling.

### SUFFICIENCY OF THE EVIDENCE

Even if the appellant were correct that the law of partnership trumps the law of joint tenancy as to bank accounts, she would still not prevail. Despite the unusual arrangement of the ex-spouses continuing to operate their business as a corporation and then as a partnership, the evidence here showed the "contrary intention" under § 358.080.2 that the two accounts were not partnership property. Nellie and Virgil were good in business, knew what they were doing in the establishment of these joint accounts, and were careful to periodically check with the bank on the legal nature of these two accounts.

Wilma attempts to point to evidence and inferences contrary to her position on appeal. These matters may not, under the scope of review, be utilized to get a different result. In any event, the fact that at one time the partners spun off certain personal property and vehicles as tenants in common, or how they handled partnership tax returns, cannot negate the trial court's well-supported findings of joint tenancy. Neither will Wilma be now heard to complain of Nellie's testimony as self-serving as to the intent to hold the accounts in joint tenancy.

There has been no showing of undue influence or fraud or any of the other factors mentioned in *Hayward* or *Kempen*. The judgment of the trial court is affirmed.

All concur.