In the Matter of the ESTATE OF Pearl B. MEYER, Deceased.

Martha H. TINDALL,
Petitioner–Respondent,

v.

Emma CHAPPELL, et al.,
Defendants–Appellants.

No. 15248.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 27, 1988.

Joseph B. Phillips, Stockton, for defendants-appellants.

Michael L. Ash, Osceola, for petitioner-respondent.

FLANIGAN, Judge.

This is a proceeding for discovery of

assets, (§ 473.340),[1] instituted by a verified petition filed by Martha Tindall in the Probate Division of the Circuit Court of Cedar County, in the Estate of Pearl B. Meyer, Deceased. Pearl B. Meyer died testate on October 19, 1985, and petitioner is one of the beneficiaries under the will.

The petition alleged that during her lifetime decedent was the owner of certain described certificates of deposit at various financial institutions and that the funds represented by the certificates were assets belonging to the decedent. Among the certificates of deposit in controversy were the following, issued by Farmers Bank of Walker and hereafter called "the original certificates."[2]

| Cert. No. | Payee(s) | Date | Amount |
|---|---|---|---|
| 1409 | Pearl Meyer and/or Gerald Larsen | 2-20-75 | 2,000 |
| 1410 | Pearl Meyer and/or Ivan Neil Larsen | 2-20-75 | 2,000 |
| 1411 | Pearl Meyer and/or Elaine Larsen | 2-20-75 | 2,000 |
| 1412 | Pearl Meyer and/or Allen M. Larsen | 2-20-75 | 1,000 |
| 1413 | Pearl Meyer and/or Carl Edward Larsen | 2-20-75 | 1,000 |
| 1571 | Pearl B. Meyer or Pearl Ruth Larsen | 3-24-76 | 3,000 |

The defendants in the proceeding included Gerald Larsen, Ivan Neil Larsen, Elaine Larsen, Allen M. Larsen, Carl Edward Larsen, and Pearl Ruth Larsen. Pearl Ruth Larsen was the executrix of decedent's will, and she appeared by counsel in her individual and representative capacities.

On July 12, 1978, Pearl B. Meyer was adjudicated incompetent, and Pearl Ruth Larsen was appointed guardian of her person and estate.

On November 21, 1980, the guardian "cashed in" the original certificates and obtained the same number of replacement certificates. Unlike their respective predecessors, the replacement certificates contained statutory language of joint tenancy. For example, replacement certificate number 10329, which replaced original certificate number 1409, was made payable to "Pearl Meyer or Gerald Larsen or order of either of them, or the survivor, being issued to them as joint tenants with right of survivorship, and not as tenants in common."

The petition alleged, and the answer of defendants admitted, that defendants were in possession of the replacement certificates and claimed them "as their own property and not the property of Pearl Meyer." The answer also alleged that each of the replacement certificates was "jointly owned" by the payees "and that on the death of Pearl B. Meyer the surviving joint tenants became the sole owners of and entitled to possession of such certificates."

Following an evidentiary hearing, the trial court found that the funds represented by the original certificates and now in the replacement certificates were assets of the decedent's estate and were to be distributed according to her will. The court found that the original certificates "as issued before decedent was adjudicated to be incompetent, do not conform to the statutory requirements of joint tenancy." Defendants appeal.

Defendants' sole point is that trial court erred in finding that the funds represented by the original certificates were assets of the estate because: (a) the replacement certificates were in proper joint tenancy form at the date of decedent's death; (b) "the action of the guardian was lawful and proper to renew the certificates of deposit as joint tenants with right of survivorship, in the same names as the original certificates and in the same amounts, as it clearly carried out the intent of the decedent"; and (c) "there was no evidence of fraud, undue influence, mental incapacity, or mistake by the guardian or survivors."

1. Unless otherwise indicated, all references to statutes are to RSMo 1986, V.A.M.S.

2. The dispute with regard to ownership of other certificates named in the petition was resolved prior to the instant appeal.

At the hearing the trial court announced that he would take judicial notice of the contents of the file in the incompetency estate and the file in the decedent's estate.

Connie Peckmen, an employee of the Farmers Bank of Walker, identified the six original certificates. Although Peckmen was first employed at the bank in April 1977, she testified, without objection, that she assumed that the forms used for the six original certificates were the only printed forms which the bank used at that time.

Petitioner Tindall called defendant Pearl Ruth Larsen as an adverse witness. She testified that she was the guardian "throughout the incompetency estate." The inventory, filed in the incompetency estate on August 31, 1978, listed the original certificates as assets "in the possession of the incompetent."

Referring to the six original certificates, the witness said: "All of these were cashed in during the guardianship.... They was turned around and put in CD's." She identified the latter as the replacement certificates. She testified that the other five payees were her sons and daughters.

At the hearing, the attorney for the defendants made the following statement to the court:

"There's no quarrel that Pearl Meyer is the source of these funds.... They were properly inventoried in the guardianship estate.... [The original certificates] do not use the language, 'as joint tenants and not as tenants in common.' ... [T]his was set up on the only form that the bank was using at that time.

"It then becomes, I think, a question as to the intention of Pearl Meyer at the time these things were set up. *We don't have any evidence on that.* The books are full of cases that state that the symbol 'and/or' is rather meaningless under —under Missouri Law, from a legal standpoint. But it is submitted, Your Honor, that it is strong evidence of the intention of the depositor at the time this was set up." (Emphasis added.)

Section 362.470 deals with joint deposits in banks and § 369.174 deals with joint accounts in savings and loan associations. It has been said that the two statutes are the same "in all material respects." *Matter of Estate of Parker*, 536 S.W.2d 25, 29 (Mo. banc 1976); *In re Estate of LaGarce*, 487 S.W.2d 493, 499 (Mo. banc 1972); *In re Estate of King*, 572 S.W.2d 200, 205 (Mo. App.1978).

In *LaGarce*, which involved an account in a savings and loan association, the court held, at p. 501, that if the statute pertaining to joint accounts is complied with, "in the absence of fraud, undue influence, *mental incapacity*, or mistake, the survivor will become the owner of the account." (Emphasis added.)

Prior to 1977, § 362.470 did not mention specifically the situation where a deposit is made by one person in the name of the depositor and any one or more other persons, whether minor or adult, "as joint tenants." The quoted term was inserted in the statute in 1977. With regard to the statute in its present form, the Eastern District of this court has said:

"Pursuant to § 362.470, a depositor has two alternative methods of creating a joint tenancy: (1) make the account payable to the depositors as joint tenants; or (2) make the account payable to one or more of the depositors or the survivor or survivors of them.... It is immaterial whether the names of the depositors are listed as 'A and B,' 'A or B' or simply 'A, B.' "

*Estate of Plummer v. Fritsch*, 706 S.W.2d 573, 575 (Mo.App.1986).

It is true that even if the statute has not received compliance, a joint tenancy may be created in an account naming two or more persons, but the survivor has the burden of proof to show facts establishing that result. *In re Estate of King*, supra, 572 S.W.2d at 206; *Smith v. Thomas*, 520 S.W.2d 132, 138[10] (Mo.App.1975). Further, even if the statute receives compliance, no joint tenancy results if, as stated in *LaGarce*, there is a showing, usually

by the party opposing a joint tenancy, that the account was the product of fraud, undue influence, mental incapacity, or mistake. See also *In re Estate of Mapes*, 738 S.W.2d 853, 854[1] (Mo. banc 1987); *In re Estate of Hayes*, 658 S.W.2d 956, 958 (Mo. App.1983).

■ The original certificates did not meet the requirements of § 362.470, nor did the defendants adduce evidence, outside the original certificates, showing that Pearl B. Meyer intended to create a joint tenancy when she obtained the original certificates. See, for example, *Melton v. Ensley*, 421 S.W.2d 44 (Mo.App.1967), where the survivor did make such a showing.

Pearl B. Meyer retained possession of the original certificates until she was declared incompetent. Even if, which was not the situation, a joint tenancy had been created in the original certificates, Pearl B. Meyer, during her lifetime and while competent, could have revoked the joint tenancy, there being no showing of any other document limiting her power to revoke. *Pollock v. Brown*, 569 S.W.2d 724, 731 (Mo. banc 1978); *Crider v. Steinberg*, 721 S.W.2d 778, 780 (Mo.App.1986); *Home Sav. Ass'n of Kansas City v. Bratton*, 721 S.W.2d 40, 45 (Mo.App.1986); *In re Estate of Hampton*, 547 S.W.2d 886, 889 (Mo.App. 1977).

It is clear that if the replacement certificates had not been issued and the original certificates were still outstanding on the date of Pearl B. Meyer's death, the funds represented by the original certificates would have been assets of the decedent's estate.

■ Defendants argue that the *replacement* certificates meet the requirements of § 362.470 and thus a joint tenancy was created. It is true that the replacement certificates contain language which would satisfy the statute, in the absence of a showing of fraud, undue influence, mental incapacity, or mistake. Here, however, Pearl B. Meyer lacked mental capacity. The replacement certificates were procured by her guardian and not by Pearl B. Meyer herself. The very existence of the guardianship, based upon an adjudication of mental incompetency, was the strongest proof possible that Pearl B. Meyer herself, at the time of the issuance of the replacement certificates in November 1980, was incapable of creating a joint tenancy.

The only argument for a conclusion that defendants were entitled to the funds represented by the replacement certificates is that a joint tenancy, not previously created by Pearl B. Meyer in the original certificates, was created in the replacement certificates by the act of her *guardian*. For the reasons which follow, this court rejects that argument.

"A guardian is a creature of statute, and has only those powers that are prescribed by statute." *Trenton Trust Co. v. Western Sur. Co.*, 599 S.W.2d 481, 489[5] (Mo. banc 1980). In that case the court held that although § 475.190.1(10) empowers a guardian to invest her ward's money in time certificates of deposit, it does not authorize a guardian to make such an investment in the guardian's personal name. The court also held that when the guardian, using funds of the ward, obtained a joint certificate of deposit naming herself personally as one of the payees, she breached her fiduciary obligation to her ward. To similar effect see *Park Bank v. Yerington*, 275 S.W. 970, 972 (Mo.App. 1925).

Citing *Buder v. Stocke*, 343 Mo. 506, 121 S.W.2d 852, 858 (Mo.1938), the Eastern District of this court has held that it is a "fundamental Missouri principle" that the guardian of an incompetent person "is a mere conservator of his ward's estate, and his possession of that estate vests him with no power either *intentionally* or *unintentionally* to change his ward's duly expressed purposes respecting the disposition of her estate after her death." (Emphasis added.) *Willman v. Phelps*, 631 S.W.2d 63, 66[4] (Mo.App.1982).

In *Buder* the court held that a specific bequest contained in the will of the ward

was not adeemed by the dealings of the guardian with the property of the ward, after the latter became incompetent, where the "physical facts" made it possible to hold otherwise. The court cited with approval a federal case holding that legacies are adeemed only where such an intention appears on the part of the testator himself. To similar effect see *Lamkin v. Kaiser*, 256 S.W. 558, 559[3] (Mo.App.1923).

In *Willman*, supra, Clara Willman, while competent, created a "Totten trust" for the benefit of a named beneficiary. Clara was later adjudicated incompetent and her Missouri guardian withdrew the Totten trust funds. Although a portion of the funds properly was applied to the support of Clara, the court held that the guardian's withdrawal of all of the funds did not constitute a revocation of the trust and the trust beneficiary was entitled to the trust funds remaining at Clara's death.

■ The foregoing Missouri cases are consistent with the general rule that, in the absence of statute, a guardian is not an alter ego of his ward and has no authority to exercise the ward's discretionary power with respect to the ward's property. *Howard v. Imes*, 265 Ala. 298, 90 So.2d 818, 819–820[1] (1956); *Guerra v. Guerra*, 25 Ohio Misc. 1, 265 N.E.3d 818, 823[4] (Comm.Pl.1970); *First Federal Sav. & L. Ass'n of Detroit v. Savallisch*, 364 Mich. 168, 110 N.W.2d 724, 728 (1961); *In re Estate of Schober*, 303 Minn. 226, 226 N.W. 2d 895, 898 (1975); *In re Barletta's Estate*, 2 Misc.2d 135, 150 N.Y.S.2d 479, 483[6] (1956); *Chase Nat'l Bank of City of New York v. Ginnel*, 50 N.Y.S.2d 345, 347 (1944); *Application of National Commercial B. & T. Co.*, 50 N.Y.S.2d 274, 276 (1944); *Nat'l City Bank of Cleveland v. Hewes*, 186 N.E.2d 644, 648 (Ohio Prob. 1962); *Prickett v. Moore*, 684 P.2d 1191, 1194[14] (Okla.1984). 44 C.J.S. Insane Persons § 49, p. 134; 39 C.J.S. Guardian & Ward § 69, p. 130.

■ No joint tenancy was created by Pearl B. Meyer in funds represented by the original certificates because they did not meet the requirements of § 362.470 and there was no proof otherwise of her intention to create a joint tenancy when she obtained them. These defects were not cured by the act of the guardian in obtaining the replacement certificates. The form of the latter, which differed from the form of the originals, may have reflected the *guardian's* intent to create a joint tenancy, but the guardian had no power to substitute her intent, even if innocent and well meaning, for that of the ward.

Although not mentioned by the parties, one case deserves discussion. *In the Matter of Estate of Thompson*, 539 S.W.2d 650 (Mo.App.1976), Thompson opened a joint account in a savings and loan association with herself and Rose McMullen as joint tenants. The account met the requirements of § 369.174 with respect to creating a joint tenancy. McMullen had no knowledge of the creation of the account and her signature was not required for withdrawals. Thereafter, Thompson was declared incompetent and her guardian withdrew the entire amount of the account and deposited same in a new account in his name as guardian for Thompson. After Thompson died, McMullen filed an action seeking recovery of the funds.

Rejecting McMullen's claim, the court held that the guardian's acts were authorized by § 369.174.3 RSMo Supp.1973, which read:

"The adjudication of incompetency of any one or more of the joint tenants shall not operate to sever or terminate the joint tenancy ownership of all or any part of the account and the account may be withdrawn or pledged by any one or more of the joint owners in the same manner as though the adjudication of incompetency had not been made except that any withdrawal or pledge on behalf of the incompetent joint owner shall be by his guardian."

At p. 652 the court said:

"Section 369.174 simply gives the guardian the same power over a joint

tenant's interest in a joint account which the joint tenant possessed prior to any incompetency. That being the case, Stroud, as guardian, had the right to withdraw the funds in the joint account standing in the names of Thompson and McMullen and deposit such funds in a new account, and thereby extinguish all rights which McMullen had as a joint tenant in the joint account."

*Thompson* is not controlling here. In *Thompson* the *ward* created a joint tenancy in a savings account and the guardian, acting under express statutory authority, exercised the same power which his ward possessed.[3] In the case at bar, the ward did not create a valid joint tenancy with respect to the original certificates and § 369.174.3 did not apply to them. There is no statute authorizing the guardian to create a valid joint account with respect to funds of the ward where, as here, the ward has failed to create one.

■ One of the replacement certificates named the guardian as co-payee and the other five, respectively, named a child of the guardian as co-payee. All six receive the same fate. The guardian had no power to create, with respect to the funds of her ward, a joint tenancy in her ward and herself or a joint tenancy in her ward and anyone else, where her ward had not created such a joint tenancy. This court wishes to add that there is nothing in the present record to indicate the guardian acted through an improper motive.

The judgment is affirmed.

PREWITT, P.J., and MAUS, J., concur.

HOGAN, J., not participating.

---

**3.** In 1983 the legislature enacted what is now § 475.322, which deals with the use by a conservator of funds deposited in a joint account by his protectee.