Marianna MAUDLIN,
Appellant/Respondent,

v.

Phyllis A. LANG, et al.,
Respondents/Appellants.

No. 75627.

Supreme Court of Missouri,
En Banc.

Dec. 21, 1993.

Joseph Y. DeCuyper, Kansas City, for appellant/respondent.

Rebbecca Overman, Joe F. Willerth, Independence, for respondents/appellants.

**516**

BENTON, Judge.

Marjorie Tate died on April 18, 1989. Her niece, Marianna Maudlin, filed a petition to discover assets under § 473.340 RSMo 1986.[1] Maudlin—for Tate's estate—seeks to recover the proceeds from four bank accounts, alleging that Phyllis Lang, another niece, received and unlawfully withheld the funds. The trial court granted the estate three of the four accounts (including one inter vivos withdrawal). After the court of appeals affirmed, this Court granted transfer, and now affirms in part, reverses in part, and remands.

## I. The Statutory Joint Tenancy

■ Two statutes apply to this case: § 362.470.1 (banks) and § 369.174.1 (savings and loans). The bank statute provides:

> When a deposit is made by any person in the name of the depositor and any one or more other persons, whether minor or adult, as joint tenants or in form to be paid to any one or more of them, or the survivor or survivors of them and whether or not the names are stated in the conjunctive or the disjunctive or otherwise, the deposit thereupon and any additions thereto made by any of these persons, upon the making thereof, shall become the property of these persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to any one of such persons during his lifetime, or to any one of the survivors of them after the death of any one or more of them. [§ *362.470.1* ]

The savings and loan statute is almost identical. For the convenience of the public, financial institutions, and the bar, courts should interpret these two statutes similarly. *In re Estate of LaGarce,* 487 S.W.2d 493, 499 (Mo. banc 1972).

■ In construing statutes, courts should ascertain the intent of the legislature from the language used and, if possible, give effect to that intent. *Magee v. Blue Ridge Professional Bldg.,* 821 S.W.2d 839, 843 (Mo. banc 1991). Courts should determine the legislature's intent by considering the plain and ordinary meaning of the terms in the statute.

*Morton v. Brenner,* 842 S.W.2d 538, 541 (Mo. banc 1992).

■ Several courts have held that the governing statutes—§§ 362.470 and 369.174—create two ways of establishing a joint tenancy with right of survivorship: 1) making the deposit payable to the depositors as joint tenants; or 2) making the account payable to one or more of the depositors or the survivor or survivors of them. *Auffert v. Auffert,* 829 S.W.2d 95, 97 (Mo.App.1992); *Gaines v. Vallance,* 811 S.W.2d 472, 473 (Mo.App.1991); *Matter of Estate of Hysinger,* 785 S.W.2d 619, 623 (Mo.App.1990); *Matter of Estate of Meyer,* 744 S.W.2d 844, 846 (Mo.App.1988); *Estate of Huskey v. Monroe,* 674 S.W.2d 205, 209–11 (Mo.App.1984). However, these cases ignore the critical word "or" within the phrase, "in form to be paid to any one or more of them, *or* the survivor or survivors of them." The word "or" generally implies that the word "either" should also be used. *See Council Plaza Redevelopment Corp. v. Duffey,* 439 S.W.2d 526, 532 (Mo. banc 1969). Reading "either" into the complete phrase makes clear that a joint tenancy can be accomplished by a designation "in form to be paid *either to* any one or more of them, *or to* the survivor or survivors of them." Thus, the governing statutes create three routes to a joint tenancy with right of survivorship: 1) describing the named persons as "joint tenants"; 2) making the deposit "in form to be paid to any one or more of [the named persons]"; or 3) making the deposit "in form to be paid to ... the survivor or survivors."

■ The second and third methods use the clause, "in form to be paid." This clause focuses upon the method of designating payment, commonly by deposit agreements or similar documents. Without using magic words such as "joint tenants," "survivor," or "survivors," such documents may create a joint tenancy by using language that the deposit is to be paid to either any one or more of the named persons, or the survivor or survivors of them.

■ The deposit documents are critical. If the form of the deposit complies with the

1. Unless otherwise indicated, all statutory references are to RSMo 1986.

statute, it is conclusive evidence of the depositor's intent:

> The making of a deposit in such form, and the making of additions thereto, in the absence of fraud or undue influence, shall be conclusive evidence in any action or proceeding to which either the bank or trust company or any survivor is a party of the intention of all the parties to the account to vest title to the account and the additions thereto and all interest thereon in the survivor. [§ *362.470.1* ]

Statutory compliance makes evidence of the depositor's intent (other than in the deposit documents) irrelevant. §§ *362.470.1, 369.-174.1.*

■ If the deposit does not comply with any of the three methods in §§ 362.470 or 369.174, ownership of the account is determined by the language of the deposit documents. *See Kaw Valley State Bank and Trust v. Commercial Bank of Liberty,* 567 S.W.2d 710, 712 (Mo.App.1978). For example, any deposit is a tenancy in common if the deposit agreement expressly so states. However, if the deposit documents are ambiguous, then, and only then, evidence of the intent of the depositor is relevant, and controls the disposition of the deposit.

## II.  The Accounts in this Case

Maudlin seeks to claim the proceeds from four accounts for Tate's estate: 1) a checking account at the Bank of Grain Valley; 2) a certificate of deposit from Boatmen's Bank; 3) a certificate of deposit from Farm and Home Savings and Loan; and 4) a certificate of deposit from the Bank of Grain Valley. The trial court held that the first three accounts (including $75,000 Lang withdrew from one account before Tate's death) were part of Tate's estate. This Court must affirm the trial court's judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

### A.  Bank of Grain Valley Checking Account

■ In June 1988, Tate added Lang's name to a checking account at the Bank of Grain Valley. In July 1988, Lang withdrew $75,000 from the account. After Tate's death, Lang withdrew the remaining balance.

Both Lang and Tate signed the "Multiple Deposit Account Agreement" for the checking account. Next to their signatures is the printed term "Ownership," under which is the handwritten phrase, "Original Date 2/77" (there was no evidence about the ownership status in February 1977). The reverse side of the Agreement states that ownership is determined by "the form of ownership specified." The reverse side of the Agreement also describes potential types of ownership: "Individual Account," "Joint Account–With Survivorship," "Joint Account–No Survivorship," "Trust Account and Pay-on-Death Account," and "Corporate, Partnership, and other Organizational Accounts." In fact, none of these titles appears on the front of the Agreement.

The Agreement does not describe Lang and Tate as "joint tenants," nor make the account in form to be paid to the "survivor" or "survivors." The issue is thus whether the checking account was "in form to be paid to any one or more of" Tate and Lang. The Agreement states:

> **WITHDRAWALS—Any one of you who signs on the reverse side may withdraw or transfer all or any part of the account balance at any time on forms approved by us ..**

Both Tate and Lang signed the Agreement. Therefore, under the terms of the Agreement, both Tate and Lang had the power to withdraw funds from the account. In the absence of express language to the contrary, § 362.470 makes deposits "in form to be paid to any one or more of them" a joint tenancy with right of survivorship.

By concluding that Tate's estate was entitled to the proceeds from the checking account, the circuit court erroneously declared the law. *Murphy,* 536 S.W.2d at 32. As the surviving joint tenant, Lang owns the pro-

ceeds from the account (including the $75,000 withdrawn prior to Tate's death).

### B. Boatmen's Bank Certificate of Deposit

In 1981, the Bank of Independence—predecessor to Boatmen's Bank—issued a certificate of deposit in Tate's name alone. In 1984, Tate requested by letter that the Bank add Lang's name to the certificate. The Bank responded by typing Lang's name on the face of the certificate, next to Tate's. When the certificate expired, the bank twice reissued it to "Marjorie Tate or Phyllis Anne Lang." This was the status of the certificate at Tate's death.

The certificate of deposit, on its reverse side, states:

JOINT ACCOUNTS: If the deposit certified by this Certificate has been made in the names of two persons, it is agreed between them and Bank that

A. such persons own this Certificate and the deposit which it evidences as joint tenants with right of survivorship:

B. the sum deposited, and interest accrued thereon, may be paid to either of them or to the survivor of them:

C. each is agent for the other to receive any notice, or take any other action, affecting this Certificate or the deposit which it evidences.

Clearly, under § 362.470, the certificate was a joint tenancy with right of survivorship.

Maudlin argues that the "JOINT ACCOUNTS" language does not comply with § 362.470 because it is on the certificate of deposit, not the Account Agreement. Tate did not sign the certificate of deposit, but did sign the Agreement. However, the Agreement included a withdrawal provision almost identical to that in the Bank of Grain Valley checking account, quoted above in part A. Therefore, both the certificate of deposit and the Agreement complied with § 362.470.

Next, Maudlin argues that this result conflicts with Tate's intent for this certificate, as expressed in the letter to the bank. The plain language of § 362.470.1 defeats this argument: a deposit made in a form complying with § 362.470 is "conclusive evidence in any action or proceeding to which either the bank or trust company or any survivor is a party of the intention of all the parties to the account to vest title to the account ... in the survivor." So long as the deposit documents comply with § 362.470, other evidence of the depositor's intent is irrelevant.

The last issue is whether a statutory joint tenancy results from a "mistake" initially made by the financial institution in filling out the deposit documents, but possibly discoverable by the depositor. Such a discoverable "mistake" is not a basis to nullify a joint tenancy resulting from compliance with the statute. *See Matter of Estate of Hysinger*, 785 S.W.2d 619, 623–26 (Mo.App. 1990). Rather, under §§ 362.470 and 369.-174, the General Assembly places the burden on depositors to correct mistakes by banks or savings and loans, if depositors have the opportunity to discover the mistakes.

In this case, the circuit court specifically found that Tate was "independent," "private," and "in complete control of her financial affairs through June 1988, well after the dates of the various transactions." Tate possessed the certificates at issue and was "in control of her faculties and knew exactly what she wanted to do with her financial affairs." No party suggested that Tate suffered from any degree of mental incapacity. The circuit court specifically found no evidence of fraud or undue influence. Clearly, Tate had the opportunity to correct bank mistakes.[2]

Because the circuit court erroneously declared the law, this Court reverses. *Murphy*, 536 S.W.2d at 32. As the surviving joint tenant, Lang is entitled to the Boatmen's certificate of deposit.

### C. Farm and Home Savings and Loan Certificate of Deposit

In 1984, the certificate of deposit at Farm and Home Savings and Loan was titled

---

2. This case does not concern a nondiscoverable mistake, a mutual mistake by both the depositor and the institution, nor any mental incapacity of the depositor. Such cases could call into question whether the depositor "made" a deposit within the scope of §§ 362.470.1 and 369.174.1, and their resolution is deferred for another day.

in Tate's name only. In 1985, Tate requested by letter that Farm and Home add Lang's name to the certificate. Based on this letter, Farm and Home filled out an internal revision form. The top of the form indicates a "title change" from "Marjorie Tate" to "Marjorie Tate and Phyllis Ann Lang or either or survivor." At the bottom of the revision form is a line for "SIGNATURE OF AUTHORIZED PERSON." Instead of a signature, the typewritten words appear: "PLEASE SEE ATTACHED LETTER!!!" A letter attached to the revision form and maintained by Farm and Home states:

> I wish to add the name of Mrs. Phyllis Anne Lang, Grain Valley MO 64029 to my certificate of deposit 912–954104. She will be the executrix of my will, and her name also on my certificate will enable her in taking care of my assets.

In the middle of the revision form is the instruction "IF TITLE CHANGE, SIGNATURE OF NEW JOINT OWNERS." The two lines beneath this instruction are blank.

The evidence regarding this deposit was woefully inadequate. The certificate itself was not introduced into evidence, nor any proof as to its language. There was no evidence whether Tate knew about the revision form. Neither party introduced a deposit agreement referencing Tate and Lang.

The internal revision form clearly does not show Tate or Lang as "joint tenants." The issue is thus whether the *deposit* was either in form to be paid to Tate or Lang, or in form to be paid to the survivor. True, the revision form uses the magic word "survivor" in the "title change" to "Marjorie Tate and Phyllis Ann Lang or either or survivor." However, the revision form also incorporates the handwritten letter, which indicates that Tate added Lang's name to "enable her in taking care of my assets," not to create a statutory joint tenancy with right of survivorship. The letter thus contradicts the "survivor" language on the internal revision form. No evidence linked the revision form to the certificate of deposit or any deposit agreement. No evidence showed that the certificate itself or the agreement was either in form to be paid to Tate or Lang, or in form to be paid to the survivor. The deposit thus

was not a statutory joint tenancy with right of survivorship.

Where the deposit does not comply with the joint tenancy statute, the next determinant of ownership is the language of the deposit documents. In this case, the only relevant document is the internal revision form, which is ambiguous. Thus, ownership of the deposit cannot be determined by the language of the deposit documents.

Where ownership cannot be determined by compliance with the statute or the meaning of the deposit documents, the depositor's intent controls. The handwritten letter shows that Tate intended that Farm and Home add Lang's name to "enable her [as executrix] in taking care of my assets." This language, as the trial court found, indicates that the deposit was an asset of the estate, not a statutory joint tenancy with right of survivorship. Therefore, the circuit court did not err in ruling that Tate's estate is entitled to the proceeds from the Farm and Home certificate of deposit. *Murphy*, 536 S.W.2d at 32.

### D. Bank of Grain Valley Certificate of Deposit

■ The circuit court held that the Bank of Grain Valley certificate of deposit was a joint tenancy with right of survivorship, and thus belonged to Lang. In May 1988, Tate added Lang's name to this deposit by signing a bank form. The certificate of deposit was then titled: "Marjorie Tate or Phyllis Anne Lang." The certificate states on its face:

> If more than one depositor is named above and unless specifically indicated therein to the contrary, this certificate and the deposit evidenced hereby, shall belong to said depositors as joint tenants with right of survivorship (and not as tenants in common) ...

By providing that Lang and Tate owned the deposit as joint tenants with right of survivorship, the certificate clearly complies with § 362.470. Therefore, the estate cannot recover the proceeds of the certificate. The circuit court correctly declared and applied the law governing the Bank of Grain Valley certificate of deposit. *Id.*

### III.

Phyllis Lang, as the surviving joint tenant, owns the proceeds of the checking account from the Bank of Grain Valley and the proceeds of the certificates of deposit from Boatmen's Bank and the Bank of Grain Valley. Tate's estate is entitled to the proceeds of the certificate of deposit at Farm and Home Savings and Loan. This Court thus affirms in part, reverses in part, and remands this case for proceedings consistent with this opinion.

All concur.