In re ESTATE OF Betty M.
HAYES, Deceased.

**Arpad deKALLOS, Petitioner/Appellant.**

v.

**Robert C. WEIS, Personal
Representative,
Respondent.**

No. 69936.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 11, 1997.

Rehearing Denied March 20, 1997.

Stephen K. Beimdiek, Lashly & Baer, P.C., St. Louis, for appellant.

Edward L. Thomeczek, St. Louis, for respondent.

RHODES RUSSELL, Presiding Judge.

Arpad deKallos appeals from an order directing verdict and judgment in favor of Robert C. Weis, the Public Administrator of St. Louis County and the personal representative ("personal representative") of the estate of Betty Hayes ("decedent"), in an action to determine title to a brokerage account. We find sufficient evidence was produced by deKallos to create a submissible case that the account was a joint account with a right of survivorship in deKallos. We reverse and remand.

Decedent and deKallos, an ordained minister in the United Church of Christ, were close friends. As years passed deKallos, at the request of decedent's sister, began to "keep an eye out" for decedent whose health was deteriorating. In 1988 deKallos determined that decedent had not paid property taxes for three or four years on three houses that she owned. After exploring several possible options for paying the back taxes, deKallos finally convinced decedent that she needed to sell one of her homes. Her home in Ballwin eventually sold for $82,000. He helped decedent pay the back taxes from that amount and had some repair work done on her other two houses.

Decedent asked deKallos to continue to help her with her finances. He suggested that the remainder of her money should be invested in such a way so that it was easily accessible if bills came up. At decedent's request, deKallos made an appointment with Edward D. Jones and Company ("Jones"). He took her to the appointment, although there is a dispute as to whether deKallos was in the room when decedent met with Michael J. Smith, the Jones representative. Smith indicated that deKallos was present, while deKallos maintained that he was not. At the meeting, a brokerage account was set up with both decedent's and deKallos's names on it. Several documents setting up the account were prepared at that time.

After decedent's funeral in December 1990, deKallos told decedent's sister and others that he had no interest in any of decedent's money. The St. Louis County Public Administrator's Office contacted deKallos after becoming aware of the account at Jones. deKallos stated that he had merely been assisting decedent with her finances and that he had no interest in the account. The public ad-

ministrator's office prepared the following release and sent it to deKallos:

> Comes now Rev. Arpad deKallos and hereby relinquishes any and all interest in all accounts which are currently established with Edward D. Jones & Co., in the names of Bessie Taylor Hayes and Rev. Arpad deKallos.

Instead of signing the form, deKallos typed the following at the bottom of the form:

> TO WHOM THIS MAY CONCERN:
>
> Because I had and have no "INTEREST" in any and all accounts of Bessie Taylor Hayes, ONLY RESPONSIBILITIES, I cannot sign this statement.

He typed his name on the bottom of the form and returned it to the personal representative. After discussing the situation with an attorney, deKallos claimed that he later understood for the first time that decedent, by setting up the joint account, had wanted him to have the balance of the account upon her death.

Personal representative filed a Petition to Redeem Account and attached deKallos's typed statement as an exhibit. An order was entered authorizing the personal representative to redeem the Jones account which consisted of assets in the form of cash, a certificate of deposit, debentures, and similar securities. deKallos filed a Motion to Vacate and Set Aside Order. That motion was denied and no appeal was taken.

On June 6, 1991, deKallos filed a Petition to Determine Title to Property. In response, personal representative filed an Answer and First Amended Counterclaim, in which he sought a constructive trust from the court, to have the proceeds of the Jones account be paid and delivered to him.

Smith was the primary witness for deKallos at trial. Smith testified that decedent wanted to set up an account in which both she and deKallos had access to the funds so that deKallos could assist her in paying her bills. Smith testified that that was the primary reason for creating the joint account. Smith explained to decedent that if she set up a joint account, deKallos would have access to the funds, and upon her death deKallos would be entitled to the balance of her funds. According to Smith, decedent indicated that she wanted to set up a joint account. Smith had documents prepared setting up the joint account.

During Smith's testimony, four documents were entered into evidence. The first document, Exhibit 1, was titled "Letter of Authorization to Change Ownership." It instructed Jones to change the title of the account from decedent alone, to decedent and deKallos. Decedent signed that document. The second document was a New Account Form signed by Smith. It listed both decedent's and deKallos's names on the account. The third document was a W–9 which was used by Jones to confirm decedent's social security number. Both decedent's and deKallos's names appeared on that form as well. Decedent's signature also appeared at the bottom of the form. The fourth document entered into evidence was a monthly or quarterly statement to decedent from Jones. It was an internally produced document which bore both decedent's and deKallos's names. Following their names, the letters "JTWROS" appeared. Smith testified that those letters were the abbreviation for joint tenants with right of survivorship.

At the close of the deKallos's case, both parties motioned for a directed verdict. deKallos's motion was denied. The personal representative's motion was granted. The trial court concluded that there was insufficient evidence to support a finding in favor of deKallos. deKallos's Motion for New Trial was denied. This appeal by deKallos now follows.

■ In reviewing an order directing verdict in favor of a party, we review the evidence in a light most favorable to the non-moving party and give the non-moving party the benefit of all permissible inferences while ignoring contrary evidence and inferences, in order to determine whether the non-moving party made a submissible case. *Heacox v. Robbins Educational Tours, Inc.,* 829 S.W.2d 600, 601 (Mo.App.1992).

In his first point, deKallos argues that the court erred in granting personal representative's motion for directed verdict in that deKallos had made a submissible case that the

Jones account was a joint account with right of survivorship.

■ He first argues that a statutory joint account was established by decedent when she opened the Jones account, pursuant to § 362.470.1 RSMo 1994.[1] That statute provides that deposits with banks and trust companies made in the name of the depositor and one or more other persons shall become the property of those people as joint tenants and may be paid to any survivor after the death of any one of the joint tenants. deKallos contends that the deposit into the Jones account was made pursuant to the statutory guidelines and therefore, by operation of law, title in the joint account passed to him as the surviving joint tenant. We disagree.

Section 362.470.1, by its very terms, is applicable only to "banks" and "trust companies." While deKallos attempts to argue that the term "bank" should be applied liberally, we cannot find that Jones was a "bank." Section 362.010.3 defines bank as "any corporation soliciting, receiving, or accepting money, or its equivalent, on deposit as a business." Jones's business was not to accept deposits, it was to sell various stocks and investments. There is no authority that brokerage firms, such as Jones, are "banks" within the purpose of this statute. deKallos does not argue that Jones is a "trust company." deKallos cannot rely on § 362.470.1 as a basis for the creation of a joint tenancy with right of survivorship.

Alternatively, deKallos argues that he at least made a submissible case establishing a common law joint tenancy with the right of survivorship. We agree.

■ If a deposit does not comply with the statutory method for creation of a joint tenancy account, ownership of the account is determined by the language of the deposit documents. *Maudlin v. Lang*, 867 S.W.2d 514 (Mo.banc 1993). If the deposit documents are ambiguous, then, and only then, evidence of the intent of the depositor is relevant, and controls the disposition of the deposit. *Id.* When the deposit is not made within the purview of the joint deposit statutes, and it is not accompanied by a joint

deposit agreement, it is the burden of the survivor to show by clear and convincing evidence that the deposit was made with the intention of creating a joint tenancy. *Gaines v. Vallance*, 811 S.W.2d 472, 474 (Mo.App. 1991).

Personal representative argues that there was insufficient evidence from which a jury could conclude that decedent intended to create a joint tenancy with right of survivorship.

■ The documents presented to the court were not consistent as to whether decedent and deKallos were joint tenants with the right of survivorship. Only one document, the monthly or quarterly statement, contained the letters JTWROS, which is the common acronym for joint tenancy with the right of survivorship. In addition, Smith testified that he explained to decedent that by creating the joint account with deKallos, deKallos would receive the funds in the event that she should predecease him. Smith's testimony was also not entirely consistent. He did not testify that decedent told him to create a joint tenancy with right of survivorship. Nor did he claim decedent specifically told him that she wanted deKallos to have the account upon her death. Given the standard of review for directed verdicts, however, we cannot say that deKallos failed to present sufficient evidence to create a submissible case that a common law joint tenancy with right of survivorship was established.

Alternatively, personal representative argues that his motion for directed verdict should be upheld under a waiver theory. Personal representative argued in his directed verdict motion that deKallos, through the form he returned to the public administrator's office and his statements to others, had waived any rights he may have had to the Jones account.

■ Waiver is founded upon the intentional relinquishment of a known right. *Heintz v. Swimmer*, 811 S.W.2d 396 (Mo. App.1991). Waiver can be found in either words or actions. *Steinberg v. Fleischer*, 706 S.W.2d 901 (Mo.App.1986). If waiver is implied from conduct, the conduct must clearly

---

1. Unless otherwise noted, all statutory references    are to RSMo 1994.

and unequivocally show a purpose to relinquish the right. *Rooks v. Lincoln County Farmers, Fire & Lightning Mut. Ins. Co.,* 830 S.W.2d 507 (Mo.App.1992).

 The trial court did not base its ruling on deKallos's alleged waiver. The text of deKallos's statement on the form returned to the personal representative indicated that deKallos did not know he had any ownership rights to the account. He did not relinquish any known rights. The evidence could not support a directed verdict in this case.

Personal representative also attempts to support the directed verdict under a *res judicata* theory. He contends that the issue in this case was determined in his prior action to redeem the account. Again, although raised in the directed verdict motion, the trial court did not base its ruling on such a theory.

 Generally, in order for *res judicata* to apply, there must be identity of the items sued for, identity of cause of action, identity of persons and parties to the action, and identity of quality of person for or against whom claim is made. *Champ v. Malon,* 905 S.W.2d 90 (Mo.App.1995). Although deKallos attempted to have the order to redeem the account set aside, he was not a party to that suit. As such, *res judicata* does not apply.

In his second point, deKallos argues that the court erred in denying his motion for directed verdict at the close of his case. While we find deKallos did present sufficient evidence to create a submissible case, he was clearly not entitled to a directed verdict in his favor either. There was sufficient evidence from which a jury could conclude that decedent did not wish to create a joint tenancy with right of survivorship. Point denied.

In his third point, deKallos contends that the trial court erred in granting personal representative's motion to direct verdict on personal representative's counterclaim. While the order of the court is a somewhat unclear, apparently the court directed a verdict in favor of personal representative on both deKallos's original petition and personal representative's counterclaim. Given that the court felt that deKallos had failed to

make a submissible case in his action, it was appropriate to enter judgment on the counterclaim as well. As we find that the trial court erred in entering the directed verdict in favor of personal representative on deKallos's petition, by necessity, we also find that a directed verdict on personal representative's counterclaim was not supported by the evidence.

Finally, deKallos complains about the trial court's exclusion of certain testimony by Smith which would have explained why Smith filled out the documents setting up the joint account. Given our disposition of this appeal, it is unnecessary for us to address this point.

Judgment is reversed and remanded.

SIMON and KAROHL, JJ., concur.