Deborah **THEERMAN**, Appellant,

v.

**FRONTENAC BANK**, Respondent.

No. **ED 93313**.

Missouri Court of Appeals, Eastern District, Division Four.

April 27, 2010.

Ted F. Frapolli, St. Louis, MO, for Appellant.

Lawrence E. Parres, Ronald A. Norwood, St. Louis, MO, John R. Hamill III, St. Charles, MO, Edward M. Pultz, Farmington, MO, for Respondent.

GEORGE W. DRAPER III, Judge.

Deborah Theerman (hereinafter, "Appellant") appeals the trial court's grant of summary judgment in Frontenac Bank's (hereinafter, "the Bank") favor finding Appellant was not entitled to the proceeds of four certificates of deposit (hereinafter, "the disputed CDs") as a matter of law. Appellant raises three points on appeal. We reverse and remand.

■ It is well-settled that when considering a grant of summary judgment, we review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Co.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* A summary judgment movant has the burden of proof to establish a legal right to judgment flowing from facts about which there is no genuine dispute. *Id.* at 378. "The moving party bears the burden of establishing a right to judgment as a matter of law." *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 580 (Mo. banc 2006).

■ "A 'defending party' may establish a right to judgment by showing (1) facts that negate any one of the claimant's elements ..., (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense." *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381.

■ "When the movant makes a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law," the nonmovant must show by affidavits, depositions, answers to interrogatories, or admissions on file that one or more of the material facts shown by the movant to be without any genuine dispute is, in fact, genuinely disputed. *Id.* (*quoting* Rule 74.04(e)). "A 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Id.* at 382.

The record viewed in the light most favorable to Appellant is as follows: Edna Holt (hereinafter, "Holt") was the grandmother of Appellant. Holt and her husband, Norman Holt (hereinafter, "Norman"), opened approximately thirteen CDs with the Bank between 1999 and his death on March 3, 2005. Included in these thirteen CDs were the disputed CDs: # 2340, # 2695, # 2703, and # 6101. Holt and

Norman named Holt's daughters, Jacqueline Sills Blank (hereinafter, "Blank") and Janet Y. Layman (hereinafter, "Layman"), as the pay-on-death (hereinafter, "the POD") beneficiaries of the disputed CDs.

In 2006, Appellant had a conversation with Holt during which Holt promised Appellant that "there were additional monies for [her], if anything would ever happen to [Holt], at Frontenac Bank." Appellant's sister, Pamela Stock (hereinafter, "Stock"), was present during this conversation. The parties do not dispute Holt was of sound mind at the end of her life. Blank testified Holt's mental health was "as sharp as can be" during the last ten years of her life and she was capable of handling her own financial matters. Similarly, Appellant observed Holt handling her own financial affairs and her mail without assistance.

On March 14, 2006, the Bank issued an interest check on CD # 2340 in Holt's name only. Thereafter, the Bank issued interest checks on CD # 2340 to "Edna Newhouse Holt or Debra Theernan" on June 14, 2006, September 14, 2006, December 14, 2006, and March 14, 2007.[1] The Bank issued an interest check on CD # 2695 to "Edna Newhouse Holt/Debra Theernan" on May 5, 2006, August 6, 2006, November 6, 2006, and February 6, 2007. Furthermore, the Bank issued financial statements to "Edna Newhouse Holt/De-

bra Theernan" for the disputed CDs from January 1, 2006, through December 31, 2006.

Holt died on March 24, 2007. After Holt's death, Appellant learned Holt had named her a POD beneficiary for CD # 14741 held at the Bank. On April 6, 2007, Appellant inquired about locating "some other accounts" for her at the Bank. At this time, the Bank denied Appellant had other accounts. At some point, the Bank paid the proceeds of the disputed CDs to Blank and Layman.

On November 20, 2007, Appellant filed a petition for damages against the Bank alleging Holt designated Appellant as joint owner of the disputed CDs. According to Appellant, the Bank wrongfully distributed $91,717.65 in proceeds and accrued interest on the disputed CDs to Blank and Layman, the POD beneficiaries. In response, the Bank filed a third party petition for indemnity against Blank and Layman for money had and received.

On October 23, 2008, the Bank filed its motion for summary judgment alleging two bases in support thereof.[2] First, the Bank claimed it was entitled to judgment as a matter of law under Sections 461.021 and 461.028 RSMo (2000)[3] because it paid the disputed CDs in accordance with the POD beneficiary designations. Second, the Bank alleged it was entitled to judg-

---

1. The interest checks and financial statements discussed were issued to "Edna Newhouse Holt" and "Debra Theernan." While Appellant's name is spelled "Theerman," the Bank did not challenge the misspelling of Appellant's name in its motion for summary judgment or its Respondent's brief on appeal. The Bank merely noted in its statement of uncontroverted material facts in support of its motion for summary judgment that Appellant's name was spelled "Theernan" on the CIS log, financial statements, and interest checks issued by the Bank.

2. In its original motion for summary judgment, Respondent alleged a third basis in support of its motion. Namely, Respondent alleged it was entitled to judgment as a matter of law under the express terms of the written instruments because it paid the disputed CDs in accordance with POD beneficiary designations and no evidence exists establishing Respondent consented in writing to any transfer of ownership in the disputed CDs. Respondent withdrew this argument on December 3, 2008, by motion.

3. All statutory references are to RSMo (2000) unless otherwise indicated.

ment as a matter of law under Section 362.471 because it paid the disputed CDs in accordance with the POD beneficiary designations. In effect, the Bank asserted Sections 461.021, 461.028, and 362.471 as affirmative defenses to Appellant's claim the Bank should have paid her, as joint owner, the proceeds of the disputed CDs.

In its statement of uncontroverted material facts, the Bank claimed Holt never expressed her intent to have Appellant be a named joint owner of the disputed CDs. First, Holt allegedly never asked the Bank to amend its paper records adding Appellant as a joint owner. Second, Appellant never completed the required signature card or tax reporting form to make her a joint owner of the disputed CDs. Third, the Bank claims Holt never gave Appellant any documentation indicating she was a joint owner of the disputed CDs. Fourth, the Bank alleges Appellant's "name was, unbeknownst to [the] Bank, inadvertently inserted into the Bank's computer records when the Bank switched computer program systems." Fifth, the Bank claims to rely on its paper records in the event of disputes or inconsistencies between computer records and paper records.

Following the Bank's filing of its motion for summary judgment and in preparation of its response thereto, Appellant conducted a deposition of Gretchen Funaro (hereinafter, "Funaro"), a client services manager with Fiserv Cir., Inc. Fiserv conducted a computer conversion at the Bank in May 2004. Funaro denied the Bank notified Fiserv of "any issues related to the conversion of CDs." Funaro testified she was not aware of any computer error that would result in a joint owner being added to a CD or to a CD interest check. Funaro further stated the addition of Appellant's name to an interest check "could only happen if someone at [the] Bank made some

type of change." According to Funaro, the Bank's Central Information Systems log (hereinafter, "the CIS log") lists "names and addresses that can or cannot be attached to accounts." Funaro indicated a review of the CIS log would be necessary to explain why Appellant's name was added to interest checks for the disputed CDs. Only the Certificate of Deposit log (hereinafter, "the COD log") was presented during Furnaro's deposition. Wendy Stengel (hereinafter, "Stengel"), operations officer for the Bank, testified the COD log is "on the application certificate side," whereas the CIS log "is on the port side, which house the names, the addresses, anything that could be on the various accounts."

Following Funaro's disclosure of the relevancy of the CIS log, the trial court compelled the Bank to produce the Bank's CIS log on January 6, 2009. The CIS log reflected an entry was initiated on April 14, 2006, by Katrina Elliot (hereinafter, "Elliott"), branch manager and vice president of the Bank's Earth City location, indicating "400388 Changed for Primary Holder Edna Newhouse Holt" to "Debra Theernan" under "Name 2." Stengel testified this entry indicated something was changed, but the CIS log does not show what account or CD was changed, or whether only the actual CIS log was changed.

On June 1, 2009, the trial court granted the Bank's motion for summary judgment and found Appellant was not entitled to the proceeds of the disputed CDs. Appellant appeals.

In her first point on appeal, Appellant asserts the trial court erred in granting summary judgment in favor of the Bank because a genuine issue of material fact exists.[4] Specifically, Appellant alleges the

---

4. The Bank's brief fails to address Appellant's

first point on appeal. While there is no re-

Bank's claim Appellant's name was added as a joint owner of the disputed CDs due to a computer error was "denied and controverted" by Funaro, who testified such error could not have occurred. Appellant first notes the computer conversion occurred in May 2004, whereas Appellant's name initially appeared on interest checks and financial statements for the disputed CDs in 2006. Second, Appellant relies on Funaro's testimony that "in [her] 23 years of experience [she] had never seen nor heard of" a computer error causing a name to be added to a CD interest check. Rather, Funaro stated Appellant's name could only have been added to an interest check "if someone at [the] Bank made some type of change."

The Bank contends that in order for an addition of a joint owner to be effective, the addition must have been made in accordance with the Bank's policies. The Bank proffers Appellant's name must have been added to the face of the CDs or the deposit documents completed by Holt. John Thomas (hereinafter, "Thomas"), the Bank's compliance officer, testified the Bank's policy required Holt to authorize any new owner in writing and Appellant was required to sign a signature card. It is undisputed the Bank has no writing to this effect nor did Appellant sign a new signature card for the disputed CDs. Further, the Bank claims Appellant's name was added to the Bank's "computer records relating to the CDs due to a computer error." The Bank also fails to offer a specific theory as to how Appellant's name appeared on Bank-issued financial statements and interest checks for the disputed CDs.

■■■ However, the law guides us as to what constitutes ownership, not the Bank's unwritten policy. This Court must determine whether a reasonable jury could find Appellant was a joint owner of the disputed CDs. In *Maudlin v. Lang*, 867 S.W.2d 514 (Mo. banc 1993), the Missouri Supreme Court established a three-part test to decide if a joint tenancy with right of survivorship exists. First, a court must determine if an account complies with one of the methods provided in Sections 362.470 and 369.174. *Id.* at 516. Sections 362.470 and 369.174 "create three routes to a joint tenancy with right of survivorship: 1) describing the named persons as 'joint tenants'; 2) making the deposit 'in form to be paid to any one or more of [the named persons]'; or 3) making the deposit 'in form to be paid to ... the survivor or survivors." *Id.* Second, if a deposit does not comply with Sections 362.470 or 369.174, ownership is determined by the language used in the deposit documents. *Id.* at 517. Third, if "ownership cannot be determined by compliance with the statute or the meaning of the deposit documents, the depositor's intent controls." *Id.* at 519. Here, the trial court erred in granting the Bank's motion for summary judgment because genuine issues of material fact exist. The affidavits, depositions, and exhibits offered by the Bank and Appellant demonstrate a genuine issue whether Appellant was a joint owner of the disputed CDs.

First, there is a genuine dispute whether Holt requested Appellant be added as a joint owner to the disputed CDs. In her affidavit, Elliott denied Holt expressed a desire to add Appellant as a joint owner to

---

quirement that a respondent file a brief, its failure to address this point leaves us without the benefit of its argument, if any, to support the trial court's finding of no genuine issue of material fact. *See Parrish v. Dir. of Revenue,*

11 S.W.3d 652, 654 (Mo.App. E.D. 1999)("While there is no requirement that a respondent file a brief, Driver's failure leaves us without the benefit of her argument, if any, to support the trial court's decision.").

the disputed CDs: "Holt did not add any authorized individuals or co-owners to the CDs between [Norman's] passing and her own death. Furthermore, during this time Holt never expressed any desire or intention to add any other authorized individuals or co-owners to the CDs." Elliott also relied on the fact Appellant did not complete a new signature card, which the Bank's unwritten policy required to become a joint owner of the disputed CDs.

Conversely, Appellant testified about a conversation between herself, Holt, and Stock during which Holt indicated, "there were additional monies for [Appellant], if anything would ever happen to [Holt], at Frontenac Bank." Appellant produced copies of eight interest checks issued for CDs # 2340 and # 2695 on which the names of both Holt and Appellant are listed. Appellant also produced copies of eight financial statements for CDs # 2340, # 2695, # 2703, and # 6101 on which the names of both Holt and Appellant are listed. Furthermore, Elliott initiated an entry in the CIS log on April 14, 2006, which indicated an unidentified account held primarily by Holt was "Changed to Debra Theerman." These facts clearly indicate a genuine dispute whether Holt requested Appellant to be added as a joint owner to the disputed CDs.

Second, as Appellant emphasizes in her brief, there is genuine dispute whether Appellant's name was added as a result of a computer error following the 2004 computer conversion. Thomas testified Appellant's name was added to the disputed CDs as a result of "a computer error," but was unable to state when or why the computer error occurred. During her deposition, Elliott recalled informing Christine Caguin (hereinafter, "Caguin"), Holt's power of attorney, after Holt's death that Appellant's name appeared on the computer system records due to "the conversion error." El-

liott testified she received this information after speaking with Fiserv. Elliott further stated in her affidavit that "[t]he Bank relies on the paper records containing the signature of the account owners and authorized individuals in the event of disputes or inconsistencies between the Bank's computer records and the Bank's paper records." Thus, Elliott alleged the Bank's paper records must control because a computer error caused the Bank's computer records to be inconsistent.

In contrast, Funaro refuted the Bank's allegation that a computer error caused the addition of Appellant's name to the disputed CDs. When questioned if she was aware of any computer error that would cause Appellant's name to be added, Funaro responded, "Absolutely not." Funaro testified the addition of Appellant's name to an interest check "could only happen if someone at [the] Bank made some type of change." She suggested a review of the Bank's CIS log to explain why Appellant's name was added to interest checks for the CDs. Finally, contrary to Elliott's deposition testimony, Funaro denied the Bank ever notified Fiserv of any issues arising from the conversion. These facts illustrate a genuine dispute exists whether Appellant's name was added as a result of a computer error.

Third, there is a genuine dispute whether written evidence exists demonstrating Appellant was a joint owner of the disputed CDs. The Bank alleges in its brief that "Funaro at FISERV testified unequivocally that a name listed on the FISERV CID computer logs does not reflect ownership and did not identify Deborah Theerman as an owner." The Bank's statement raises several issues. First, Funaro clearly testified the logs at issue were maintained by the Bank, not by FISERV. Second, a "CID computer log" was not at issue.[5]

5. The Bank's counsel was clearly aware of the

existence of two separate logs, a COD log and

Third, this Court's review of the legal file reflects Funaro testified in reference to the CIS log that "a name line may or may not be an owner." This testimony contradicts the Bank's characterization of Funaro's testimony as "unequivocal" that "a named listed ... does not reflect ownership." Fourth, Funaro did not have the actual CIS logs available for examination while testifying at her December 16, 2008, deposition.[6] Therefore, Funaro's statement that "I do not see a change where Deborah Theerman was added as an owner of the four CDs" was in reference to the COD logs presented during her deposition, not the CIS log.

Moreover, Appellant produced testimony and exhibits supporting the existence of written evidence she was a joint owner of the disputed CDs. Funaro testified during her deposition that "names that appear on checks are coded on the system as an owner." Correspondingly, Appellant offered copies of eight interest checks for two of the disputed CDs on which Appellant's name appears. Thus, the interest checks could be construed as written instruments evidencing ownership by the trier of fact. Appellant also included in her exhibits financial statements from 2006 that the Bank issued to Holt and Appellant for the disputed CDs. These facts demonstrate a genuine dispute as to whether there is written evidence that proves Appellant was joint owner of the disputed CDs.

Further, contrary to the Bank's assertion, it is not necessary for this Court to determine whether Appellant has proven she was a joint owner of the disputed CDs by clear and convincing evidence. It is sufficient for this Court to find that a genuine issue of material fact exists because there is a genuine dispute whether Appellant was a joint owner of the disputed CDs. Genuine issues of material fact must be determined by a trier of fact. *Monsanto Co. v. Garst Seed Co.*, 241 S.W.3d 401, 416 (Mo.App. E.D.2007). Point one is granted.

Given our decision on Appellant's first point on appeal, it is not necessary for this Court to consider Appellant's second or third points on appeal. However, in the interests of judicial economy, we will address Appellant's remaining points as they may be an issue on remand. *Shaner v. Sys. Integrators, Inc.*, 63 S.W.3d 674, 679 (Mo.App. E.D.2001); *see also Monnig v. Monnig*, 53 S.W.3d 241, 248 (Mo.App. W.D.2001)("Because the issues raised in Husband's third point may arise again on remand, in the interest of judicial economy, we will briefly address them at this time.").

In her second point on appeal, Appellant asserts the trial court erroneously entered summary judgment in the Bank's favor because it incorrectly interpreted Sections 461.021 and 461.028 as requiring the Bank to pay the proceeds of the dis-

a CIS log, during the deposition of Stengel when counsel objected, "We're not here to talk about COD logs. The court order is abundantly clear, that we're here to talk about CIS logs." The Bank fails to acknowledge this distinction throughout its brief. The Bank's unwillingness to make this distinction is significant. While referring to a *COD log* produced at her deposition, Funaro testified, "[t]here is nothing on this report that would indicate that [Appellant] is specifically a joint owner" of any CD owned by Holt. Conversely,

Appellant's name does appear on the *CIS log* under an April 14, 2006, entry initiated by Elliott as "Name 2."

6. In fact, on December 22, 2008, Appellant was forced to file a motion to compel the Bank to produce the CIS log, after the Bank failed to produce it. The trial court ordered the Bank to produce the CIS log on January 6, 2009.

puted CDs to the POD beneficiaries. Specifically, Appellant alleges Sections 461.021 and 461.028 do not address the relationship between a joint owner and POD beneficiaries nor do they require a written document for a CD holder to add a joint owner. The Bank effectively alleges these sections act as affirmative defenses to Appellant's claim that a genuine issue of material fact exists as to whether she was a joint owner of the disputed CDs.

Statutory construction is a matter of law. *Ragan v. Fulton State Hosp. and Div. of Employment Sec.*, 188 S.W.3d 473, 475 (Mo.App. E.D.2006). When engaging in statutory construction, the primary purpose is to ascertain the intent of the legislature from the language used to give effect to the intent if possible. *Crack Team USA, Inc. v. Am. Arbitration Ass'n*, 128 S.W.3d 580, 581 (Mo.App. E.D.2004). Words are to be given their plain and ordinary meaning wherever possible. *Id.* "Where the statutory language is clear and unambiguous, this Court will give effect to the language as written and not engage in statutory construction." *City of Bridgeton v. Titlemax of Missouri, Inc.*, 292 S.W.3d 530, 536 (Mo.App. E.D.2009).

Chapter 461 governs nonprobate transfers of property. Section 461.005(7) defines a nonprobate transfer as "a transfer of property taking effect upon the death of the owner, pursuant to a beneficiary designation." However, it specifically excludes the application of Sections 461.003 to 461.081 "survivorship rights in property held as joint tenants." If the trier of fact finds Appellant to be a joint owner of the disputed CDs, then Section 461.021 and 461.028 are inapplicable and cannot serve as affirmative defenses for the Bank.

Moreover, the Bank engages in a strained reading of Section 461.028. Specifically, the Bank claims "Section 461.028 provides that the pay-on-death beneficiary designations on the CDs are 'conclusive evidence' of the *ownership* of those CDs." Section 461.028.5 provides, in relevant part:

> An account record, security certificate, or instrument evidencing ownership of property that contains a transfer on death direction written as part of the name in which the property is held or registered, is conclusive evidence ... that the direction was regularly made by the owner and accepted by the transferring entity, and was not revoked or changed prior to the death giving rise to the transfer.

Under Section 461.028.5, an account record evidencing ownership of property that includes a written transfer on death direction as part of the name in which the property is held or registered is conclusive evidence that the *transfer on death direction* "was regularly made ... and was not revoked or changed prior to the death giving rise to the transfer." Section 461.028.5 provides conclusive evidence of the *pay-on-death beneficiary* designation, not conclusive evidence of *ownership* of the disputed CDs. While the disputed CDs may be in full compliance with Sections 461.021 and 461.028, that compliance with regard to designation of pay-on-death beneficiaries is irrelevant under Chapter 461 if Appellant is found by the trier of fact to be a joint owner of the disputed CDs.

■ In her third point on appeal, Appellant claims the trial court erroneously granted the Bank's summary judgment motion because it wrongly interpreted Section 362.471.6 as mandating the Bank pay the proceeds of the disputed CDs to the POD beneficiaries. Specifically, Appellant alleges Section 362.471 does not address the relationship between a joint owner and POD beneficiaries nor do they require a written document for a CD holder to add a joint owner. In response, the Bank claims

it is entitled under Section 362.471.6 to "full credit" for its payments to the POD beneficiaries because it was not served with process by a court restricting those payments.

Section 362.471 addresses POD accounts maintained by banks and trust companies. The Bank relies on Section 362.471.6 as an affirmative defense. Section 362.471.6 provides:

> Any payment made by a bank or trust company on an account as described in this section shall be entitled to full credit upon such payment without necessity of determining whether any other person shall have an interest in the account, unless the bank or trust company shall have been served with process by a court of competent jurisdiction restricting payment on the account in accordance with the terms of such process.

While it is undisputed by the parties that the Bank did not receive service of process by a court restricting payment on the disputed CDs, the deposition testimony of Elliott indicates the Bank had actual notice of a dispute regarding the disputed CDs. Specifically, Elliott testified Caguin inquired after Holt's death why Appellant's name was on the computer system records.

Nevertheless, according to Section 362.471.3, a POD account becomes the property of the person(s) named as the POD person(s) "at the death of *all the first named persons.*" Thus, if there is more than one first named person on the POD account, they are considered joint tenants with right of survivorship, and "the account shall be paid in equal shares to pay-on-death persons living at the time all first named persons have died." Section 362.471.3. Accordingly, the Bank would not be entitled to judgment as a matter of law pursuant to Section 362.471.6 for paying the POD beneficiaries the proceeds of

the disputed CDs until "all first named persons [on the disputed CDs] have died."

The trial court's grant of the Bank's summary judgment motion is reversed and remanded for further proceedings consistent with this opinion.

KURT S. ODENWALD, P.J., and GARY M. GAERTNER, JR., J., concur.